James **WILLIAMS**, Appellee/Cross–Appellant,

v.

**VALENTEC KISCO, INC.,**
Appellant/Cross–Appellee.

**Nos. 90–2909, 90–2910 and 90–2911.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1991.

Decided April 29, 1992.

Rehearing and Rehearing En Banc Denied June 11, 1992.

---

724

William T. Weidle, Jr., St. Louis, Mo., argued, for appellant/cross-appellee.

Brian N. Brink, St. Louis, Mo., argued (Mary Ann Lindsey, on the brief), for appellee/cross-appellant.

Before ARNOLD,* JOHN R. GIBSON, and BEAM, Circuit Judges.

---

* The HONORABLE RICHARD S. ARNOLD became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

JOHN R. GIBSON, Circuit Judge.

James Williams prevailed in his claim that he was discharged by Valentec Kisco, Inc., because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.A. §§ 621–34 (1988 & West Supp.1991). However, the jury rejected his claim brought under 42 U.S.C. § 1981 (1988) that he was also discharged because of his race, and the magistrate judge[1] who tried the case entered a similar judgment on his Title VII race claim brought under 42 U.S.C. § 2000e–2 (1988). Valentec Kisco argues on appeal that it was entitled to judgment notwithstanding the verdict on the age claim. Williams argues that the magistrate judge erred in finding against him on his Title VII claim and in giving instructions on the section 1981 race claim which did not properly inform the jury of the burden of proof and shifting burdens in such cases. Williams further argues that the magistrate judge erred in denying his motion for liquidated damages and front pay. We affirm the judgment of the magistrate judge in all respects except on the front pay issue, which we remand for reconsideration in accordance with our instructions.

We state the facts in the light most favorable to Williams as we are required to do under the standard set forth later in this opinion.

Valentec Kisco manufactures grenades and Army parts. Williams, a black man, had worked for Valentec Kisco for about twelve years, and was 51 years old at the time of the events at issue. Williams had been off work on medical leave because of job-related injuries and prostate surgery. When he returned, he worked on the second shift for approximately four months and then switched to the third shift to avoid working overtime. His regular job on the second shift had been to check the quality of grenades coming down the lines. He asked to be transferred back to the second shift and was told that the only job available was a sealer position. That posi-

tion entails taking boxes of hand grenades and sealing them by placing aluminum foil bags on each box. The box is then sent to the second sealer who vacuum seals the box, places it in another box, and tapes the outside box. The sealer then loads the box onto a skid located next to the assembly line. Each box holds approximately 200 grenades and weighs approximately 67 pounds. When the skid is full, a tow loader moves it away from the line, and an empty skid is then moved in place for loading.

Williams told his supervisor, Leigh, that he would prefer to stay on the third shift if the sealer position was the only job available during the second shift, because his medical condition made lifting difficult. Leigh told Williams that he had to return to the second shift. Although Leigh testified that Williams requested the change back to the second shift, there was no documentation in the file regarding the change, and no explanation for the lack of documentation.

On March 11, 1987, Williams reported for work and Leigh assigned him his duties. After about two and a half to three hours Williams took a break to go to the restroom. Before he left there was a nearly full skid that he had been loading approximately two feet from his position on the line. When he returned from the restroom the skid had been moved twelve feet from its earlier position and no new skid was put in its place. Leigh told Williams that he had ordered the skid moved in his absence, and when Williams asked why, Leigh said, "I do like I want to." Customarily, one of the sealers instructed that the skid be moved away from the line when it was nearly full.

Williams then obtained a two wheeler hand dolly located some ten feet from the assembly line, intending to use it to place boxes on the dolly and move them from the line to the skid. Leigh told him he could not use the dolly and made Williams accompany him to the office, where they were

---

**1.** A United States magistrate judge tried the case with the parties' consent pursuant to 28 U.S.C.A. § 636(c) (West Supp.1991).

joined by Sam Asbrock, a foreman, and the shop steward. Leigh told Asbrock what had happened and that Williams refused to do his job. Asbrock asked Leigh what he was doing with an old man carrying the boxes anyway. When the shop steward asked Leigh why he objected to Williams' using the two wheeler, Leigh stated that he was going to "fire this son of a bitch." Leigh then told Williams to leave the plant, and Williams left.

Leigh suspended Williams pending an investigation and prepared a disciplinary report showing that Williams refused to accept his job assignment. Williams told Leigh that day that he was having medical problems and Leigh wrote on the report that Williams informed him he was unable to do the job. There was evidence that the two wheeler was used to move grenades from place to place within the factory, and to pick up grenade parts. There was no written rule prohibiting employees from using the two wheeler to move boxes of grenades from the line to the skid, and nothing in Valentec Kisco's literature stated that the two wheeler could not be used in this fashion due to any safety hazards. The company safety rules did not prohibit use of the two wheelers, but they did state that employees were not to attempt to lift weights that were too heavy for them. Williams had used the two wheeler to move grenades from one place to another while working the second shift earlier in the week, and no one had ever told him that he could not use the two wheeler in that fashion. Valentec Kisco eventually terminated Williams and replaced him with a 30–year-old male, who left shortly thereafter on medical leave, and was in turn replaced by a 20–year–old white male. Williams made efforts to be reinstated, but was unsuccessful. He then commenced this action.

The issues submitted to the jury were whether age or race were "determining" or "motivating" factors in Williams' discharge. The jury was also instructed that defendant claimed that the sole reason for the termination was refusal to perform a job as directed by his supervisor, and that plaintiff had the burden to prove that this was mere pretext or coverup for the discharge. The jury found for Williams on his age discrimination claim and determined Valentec Kisco's conduct to be willful. However, the jury rejected Williams' section 1981 race discrimination claim. The magistrate judge entered judgment for Valentec Kisco on the Title VII race discrimination claim, holding that because of the jury verdict on the section 1981 claim, collateral estoppel required a finding of no discrimination for the Title VII claim as well. The jury assessed Williams' damages at $85,000. The magistrate judge ruled that Williams had waived any claim to liquidated damages when his counsel stated on the record that he would not pursue punitive damages on either the race or age claim pursuant to an agreement that certain evidence would be excluded from trial in return for this stipulation.

## I.

Valentec Kisco argues that the magistrate judge erred in failing to grant its motion for judgment notwithstanding the verdict since there was no "competent and substantial" evidence to support a finding of pretext or intentional age discrimination.

■ An age discrimination case may proceed to trial on two paths: one involving direct evidence and the other using the three stage order of proof and presumptions that arise therefrom under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the latter method, the plaintiff has the initial burden of proving a prima facie case.[2] The burden of production then shifts to the employer to "articulate some

**2.** The four basic elements of plaintiff's prima facie case are:
(1) that he or she is within a protected age group, (2) that he or she met applicable job qualifications, (3) that despite these qualifications, he or she was discharged, and (4) that, after the discharge the position remained

open and the employer continued to seek applications from persons with similar qualifications.
*Dace v. ACF Industries, Inc.,* 722 F.2d 374, 377 (8th Cir.1983) (quoting *Cova v. Coca–Cola Bottling Co.,* 574 F.2d 958, 959 (8th Cir.1978)).

legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. The employee must then rebut the employer's reason by proving that his articulated reason was mere pretext. *Id.* at 804, 93 S.Ct. at 1825; *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1134 (8th Cir.1989) (applying *McDonnell Douglas* standard of proof in age discrimination cases). Valentec Kisco's arguments pertain primarily to this shifting burden analysis.

Our earlier cases make clear the scope of our review regarding this issue. As we said in *Barber v. American Airlines, Inc.*, 791 F.2d 658, 659 (8th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 254 (1986), in considering submissibility of an age case:

> [W]e are concerned primarily with the simple question whether the record contains enough evidence to justify a rational jury in finding that age was a determining factor in what happened to plaintiff[ ], a factor in the absence of which the employer would not have taken the adverse action it did.

*See also Morgan v. Arkansas Gazette*, 897 F.2d 945, 948 (8th Cir.1990) (once there has been finding of discrimination, on appellate review, three-stage order of proof and presumptions arising therefrom fade away). All we are to focus upon is whether there was sufficient evidence to support the jury's finding of intentional discrimination. *Id. Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 358 (8th Cir.1987); *Barber*, 791 F.2d at 660. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). In *Morgan*, we set forth the standard guiding our review of jury verdicts. This standard requires that we:

> 1) consider the evidence in the light most favorable to [Williams], who prevailed with the jury; 2) assume that all conflicts in the evidence were resolved by the jury in [Williams'] favor; 3) assume as proved all facts which [Williams'] evidence tends to prove; 4) give [Williams] the benefit of all favorable inferences which may reasonably be drawn from the

facts proved; and 5) affirm the denial of the motion if reasonable persons could differ as to the conclusions to be drawn from it.

897 F.2d at 948 (quoting *Gilkerson v. Toastmaster*, 770 F.2d 133, 136 (8th Cir. 1985)). We further stated in *Morgan* that the court should consider only the evidence favoring the nonmoving party. 897 F.2d at 948.

■ We have set forth above the evidence in a light most favorable to Williams under the standards articulated in *Morgan* and *Barber*. We confess that the case is close. The evidence certainly supports a conclusion that the supervisor, Leigh, was arbitrary in moving the skid and in forbidding Williams from using the dolly to move the boxes from the line to the skid. The evidence could support an inference that there was some bad blood between Leigh and Williams in this respect. Leigh made several other arbitrary actions in which he made clear that he was requiring Williams to make shift changes or use equipment exactly as Leigh desired, and failed to require Williams to seek medical attention when informed that Williams was having medical problems.

■ Valentec Kisco's articulated legitimate nondiscriminatory reason for terminating Williams was that he disobeyed direct orders from Leigh. The evidence we recited above is sufficient to support a finding that this stated reason was pretextual. Valentec Kisco argues, however, that the plaintiff cannot prevail only by proving pretext, but must also prove that age was a determining factor in the employer's decision to fire the employee. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), holds that the plaintiff may prove discrimination "either directly by persuading the [factfinder] that a discriminatory reason more likely motivated the employer *or indirectly by showing that the employer's proffered explanation is unworthy of credence.*" *Id.* at 256, 101 S.Ct. at 1095 (em-

phasis added). *Aikens* reasserts *Burdine's* holding that a plaintiff may prove discrimination indirectly by showing that the articulated explanation for discharge is unworthy of belief. 460 U.S. at 716, 103 S.Ct. at 1482.

Valentec Kisco relies on cases from circuits that have replaced the conjunction "or" found in *Burdine* with "and," requiring the plaintiff to persuade the factfinder both that a discriminatory reason more likely motivated the employer, *and* show that the employer's proffered reason was unworthy of credence. *See, e.g., Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1508 (5th Cir.1988); *White v. Vathally,* 732 F.2d 1037, 1042–43 (1st Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). Valentec Kisco argues that our circuit subscribes to this requirement of an additional showing of age as a determining factor in the discharge, which one writer has referred to as the "pretext-plus" theory.[3] To the contrary, we have rejected such an argument. In *MacDissi v. Valmont Industries, Inc.,* 856 F.2d 1054 (8th Cir.1988), we stated that an "employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred." *Id.* at 1059. *MacDissi* based this statement on an accurate reading of *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. *See also Goetz v. Farm Credit Servs.,* 927 F.2d 398, 400–01 (8th Cir.1991); *Morgan,* 897 F.2d at 951–52 (quoting the above language from *MacDissi*). *But see Gray v. University of Arkansas,* 883 F.2d 1394, 1402 (8th Cir.1989) (hinting at a pretext-plus approach). We recognize that, while a federal circuit judge, Justice Scalia indicated that he favored a "pretext-plus" approach. *See Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1245–47 (D.C.Cir.1984) (Scalia, J., dissenting). Nonetheless, *Burdine* clearly does not support a pretext-plus approach. We reject Valentec Kisco's contention that Williams had to both discredit its stated reason for firing him and prove that age was a determining factor in Valentec Kisco's decision.

■ In addition to this evidence of pretext, however, Asbrock questioned Leigh as to what he was doing "with an old man carrying the boxes anyway?" Asbrock was another supervisor who also signed the disciplinary report. The issue presents itself as to whether this is direct evidence of a discriminatory intent.[4] *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (plaintiff using direct evidence of discrimination need not rely on *McDonnell Douglas* shifting burdens of proof); *Perry v. Kunz,* 878 F.2d 1056, 1058–59 (8th Cir. 1989) (same). *See also Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991) (direct evidence of discrimination can include employer's remarks reflecting discriminatory attitude). Williams did not submit a direct evidence theory. Asbrock's statement, however, could fairly be considered as direct evidence of discriminatory intent, and provides an independent basis to support the jury's finding of pretext.

Valentec Kisco asserts additional arguments that merit little discussion. For instance, Valentec Kisco argues that the magistrate judge erred in failing to admit evidence that Leigh could not know the identity of Williams' replacement. This argument is an attack on Williams' prima facie case, which is irrelevant at this stage. *See Aikens,* 460 U.S. at 714–15, 103 S.Ct. at 1481; *Morgan,* 897 F.2d at 948 (appellate court will not assess adequacy of a party's showing at any particular stage of *McDonnell Douglas* analysis). Valentec Kisco also argues that Asbrock's comment was not discriminatory, but was actually made on behalf of Williams. This asks us to

---

3. *See* Catherine J. Lanctot, *The Defendant Lies and the Plaintiff Loses: The Fallacy of the "Pretext-Plus" Rule in Employment Discrimination Cases,* 43 Hastings L.J. 59, 64–68 (1991).

4. Direct evidence is also used in "mixed motive" cases. *See Price Waterhouse v. Hopkins,* 490 U.S. 228, 259, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989).

make our own factual and credibility determinations, which we may not do. Neither will we probe into policy issues regarding the ADEA, as Valentec Kisco invites us to do. Suffice it to say that we conclude that there was sufficient evidence to support the jury's conclusion that Williams' age was a determining factor in the loss of his job.

## II.

Williams argues that the magistrate judge erred in denying his motion for liquidated damages and front pay.

### A.

■ Williams claims that he was entitled to liquidated damages because the jury unanimously found that Valentec Kisco's discriminatory conduct was willful. Liquidated damages are allowable under the ADEA only for "willful violations." 29 U.S.C. § 626(b); *Bethea v. Levi Strauss & Co.*, 827 F.2d 355, 358 (8th Cir.1987). Liquidated damages serve as a deterrent to willful violations of the Act, *see Trans World Airlines*, 469 U.S. at 125, 105 S.Ct. at 623, and while there is an aspect to such damages that is punitive in nature, *Rademaker v. Nebraska*, 906 F.2d 1309, 1313 (8th Cir.1990), they are not the equivalent of punitive damages. *See Bruno v. Western Elec. Co.*, 829 F.2d 957, 967 (10th Cir. 1987). Punitive damages as such are not recoverable under the ADEA. *See generally* 29 U.S.C. §§ 621–34.

■ The magistrate judge determined that Williams' counsel waived the right to liquidated damages by stipulating before trial that he would not seek punitive damages. Williams' counsel stated on the record that he would not pursue punitive damages on either the race claim or the age claim. The record indicates, however, that counsel intended to waive only punitive damages on both counts, as he stated: "I want to make clear that the allegations of intentional acts on the age claim would still stand, and we'd still be asking for damages on that." Additionally, the magistrate judge allowed Williams to submit a special interrogatory on the verdict form asking the jury to determine whether Valentec Kisco's violation was "willful." We do not read this stipulation as foreclosing consideration of liquidated damages, and are satisfied that the magistrate judge erred in concluding that it did.

■ We entertain serious question, however, as to whether the evidence is sufficient to support the jury's finding of willfulness. In *Morgan v. Arkansas Gazette*, we discussed the standard for determining whether an ADEA violation is willful. 897 F.2d at 952. We stated that "[a] violation is willful if 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Id.* (citations omitted). "'Thus, in order that the liquidated damages be based on evidence that does not simply duplicate that needed for the compensatory damages, there must be some additional evidence of the employer's "reckless disregard."'" *Id.* (citations omitted). While we believe that foreman Asbrock's statement about an old man's carrying the boxes is direct evidence of age based animus, it is insufficient to establish a willful violation of the Act. We thus affirm the denial of liquidated damages for willfulness on the basis that there was no evidence to support such a finding.

### B.

■ The magistrate judge also denied Williams' motion for an award of front pay because Williams had not requested reinstatement in his pleadings. Relying on a Third Circuit case and two district court decisions, the magistrate judge determined that a claim for reinstatement is a prerequisite to receiving a front pay award. *E.g., Wehr v. Burroughs Corp.*, 619 F.2d 276, 283 (3d Cir.1980). We have never addressed this specific question, but we note that the Tenth Circuit views the issue dif-

ferently than does the Third Circuit. *EEOC v. Prudential Federal Sav. & Loan Ass'n*, 763 F.2d 1166, 1173 n. 2 (10th Cir.) (plaintiff "need not 'request reinstatement as a prerequisite to obtaining front pay where the evidence reveals an atmosphere of hostility' "), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985) (citation omitted).

We have held that in fashioning equitable relief for the plaintiff, the court may grant reinstatement or monetary damages in lieu of reinstatement, *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1100 (8th Cir.1982), tailoring the remedy to "make the injured party whole." *Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir.1988). We have recognized that reinstatement is sometimes not an appropriate remedy, as when there is "evidence of extreme animosity between plaintiffs and defendant employers." *Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 281 (8th Cir.1983). We have also said that a plaintiff who is granted reinstatement cannot also receive an award of front pay. *Morgan*, 897 F.2d at 954. However, we have never said that the failure to request reinstatement is an absolute bar to the district court's consideration of awarding front pay in lieu of reinstatement. The district court is to use its discretion in deciding whether to grant equitable relief. *MacDissi*, 856 F.2d at 1060; *Gibson*, 695 F.2d at 1100. Here, the magistrate judge abused his discretion by applying an incorrect rule of law to procedurally bar consideration of the merits of Williams' claim for front pay.

We therefore remand the front pay issue to the magistrate judge, with directions to

consider whether an award of front pay would be equitable. The magistrate judge should keep in mind that "[f]uture damages should not be awarded unless reinstatement is impracticable or impossible.... Because future damages are often speculative, the district court, in exercising its discretion, should consider the circumstances of the case, including the availability of liquidated damages." *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 616 (1st Cir.1985). *See also Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1424 (4th Cir.) (whether front pay is available is a matter left to discretion of district judge, who "must consider a host of factors, including whether reinstatement is practical"), *cert. denied*, —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).

### III.

■ Williams argues that the magistrate judge erred in not finding Valentec Kisco liable on his race discrimination claims. The judge found against Williams on his Title VII claim after the jury found against him on his section 1981 claim.[5] Williams claims that he established a prima facie case of racial discrimination, and that Valentec Kisco's explanation was pretextual. In essence, Williams attempts to substitute this court as factfinder. The magistrate judge acknowledged the jury's finding and correctly determined that collateral estoppel forced him to reach the same conclusion in Williams' Title VII claim. *See McIntosh v. Weinberger*, 810 F.2d 1411, 1429 (8th Cir.1987) (once jury has made finding on core issue of discrimination in section 1981 action, collateral estoppel precludes district judge from making a contrary finding for

---

**5.** Submission of the discriminatory discharge claim under section 1981 may have given Williams more than he would have been entitled to at certain periods during the past several years. Such a case was submissible at the time of trial but later was not. *See Hicks v. Brown Group, Inc.*, 902 F.2d 630, 635–48 (8th Cir.1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 1299, 113 L.Ed.2d 234 (1991) (remanded for further consideration in light of *Taggart v. Jefferson County Child Support Enforcement Unit*, 935 F.2d 947

(8th Cir.1991)); *Hicks*, 946 F.2d 1344 (8th Cir. 1991) (overruling original decision in light of *Taggart* and *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). The Civil Rights Act of 1991 now allows such an action under section 1981, but we have recently held the Act to be nonretroactive. *Fray v. Omaha World Herald Co.*, 960 F.2d 1370 (8th Cir.1992). As the jury rejected his claim, this issue needs no further discussion.

purposes of Title VII claim), *vacated on other grounds, Turner v. McIntosh,* 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988). Williams does not address the basis of the magistrate judge's ruling, and there is no error in the approach the court took.

## IV.

■■■ Williams then argues that Instructions 16 and 20 on the section 1981 race discrimination claim were erroneous because they did not properly advise the jury of the burdens of proof as set out in *McDonnell Douglas.* Indeed, Williams submitted a six-page instruction requiring the jury to answer specific questions regarding, *inter alia,* (1) the elements of his prima facie case; (2) articulation of a nondiscriminatory reason for discharge; (3) pretext; and (4) whether Williams would have been discharged regardless of his race.

The Supreme Court has stressed that the *McDonnell Douglas* stages of proof method was " 'never intended to be rigid, mechanized, or ritualistic,' " *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)). Likewise, we have held that the *McDonnell Douglas* "ritual is not well suited as a detailed instruction to the jury" and adds little understanding to deciding the ultimate question of discrimination. *Grebin v. Sioux Falls Indep. Sch. Dist.,* 779 F.2d 18, 20 (8th Cir.1985).[6] *See also Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–17 (1st Cir. 1979). We pointed out in *Grebin* that the *McDonnell Douglas* analysis was articulated in a court-tried case, and observed that it is far more applicable to a bench trial than to deliberations of a jury. Once a full record has been developed, as it was in this case, the factfinder should proceed to the specific question of whether the action of the employer was discriminatory.

*See Aikens,* 460 U.S. at 715, 103 S.Ct. at 1481.

Instructions 16 and 20 submitted the ultimate issue of whether race was a motivating factor in the discharge decision. They informed the jury that Williams was not required to produce direct evidence of unlawful motive, and that intentional discrimination is seldom admitted but may be inferred from the existence of other facts. In addition to these two instructions, another instruction given to the jury stated that "Plaintiff has the burden of proving that [Valentec's] stated reason [for discharge] was a mere pretext or a cover-up for plaintiff's discharge on the basis of [race]." As an appeals court, we read the instructions as a whole and consider them in light of the entire charge. *Crimm v. Missouri Pac. R.R.,* 750 F.2d 703, 711 (8th Cir.1984). Here, the instructions were adequate. Further, the form and language of jury instructions are committed to the sound discretion of the district judge so long as the jury is correctly instructed on the substantive issues in the case. *See Federal Enter., Inc. v. Greyhound Leasing & Fin. Corp.,* 786 F.2d 817, 820 (8th Cir.1986). The magistrate judge did not err in instructing the jury in this case.

We affirm the magistrate judge's judgment in all respects, except for the issue of front pay, which we remand for further consideration in light of this opinion.

---

6. *Foster v. University of Arkansas,* 938 F.2d 111, 115 (8th Cir.1991), while stating that *Price Waterhouse* superseded *Grebin,* discusses only the phrase "a determining factor" in a jury instruction, and does not deal with the issue before us.