**Betty ROUSH, Plaintiff–Appellee,**

v.

**KFC NATIONAL MANAGEMENT COMPANY, Defendant–Appellant.**

**No. 92–5802.**

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1993.

Decided Dec. 2, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 27, 1994.

Priscilla S. Diamond, Louisville, KY (argued and briefed), for Betty Roush.

Steven T. Catlett, Jones, Day, Reavis & Pogue, Columbus, OH (briefed), Pamela M. Greenwell, KFC Nat. Management Co., Louisville, KY, Stanley Weiner, Jones, Day, Reavis & Pogue, Dallas, TX (argued and briefed), for KFC Nat. Management Co.

Before: GUY and BATCHELDER, Circuit Judges; and MILES, Senior District Judge *.

MILES, Senior District Judge.

Defendant-appellant KFC National Management Company ("KFC") appeals a judgment in favor of the plaintiff-appellee Betty Roush in this action alleging violation of the Age Discrimination in Employment Act and intentional infliction of emotional distress. For the reasons which follow, we **AFFIRM IN PART, REVERSE IN PART,** and **REMAND** the case for entry of judgment consistent with this opinion.

I

Betty Roush began working in KFC's Louisville, Kentucky payroll processing department in 1980. Her duties generally consisted of entering payroll information from individual KFC stores into a computer system, editing proofs of the data, and making necessary corrections. Beginning early in her career at KFC, Roush was cited during performance reviews for certain deficiencies and problems in her performance. Twice—in 1983 and again in 1985—Roush was placed on probation. Roush appears to have had particular difficulty getting along with her last immediate supervisor, Judy Sanders. Roush felt that she was deliberately overworked in an attempt to test her because of

---

* The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation.

her age. Sanders, in turn, appears to have had no particular fondness for Roush. In 1985, Sanders began documenting deficiencies in Roush's performance. On more than one occasion, Sanders made derogatory age-related comments about Roush, and mocked her. Other KFC employees joined in the mocking.

In 1985, Roush was warned by another payroll employee, Wetonah Crabb, that she was about to be fired. Crabb suggested that Roush take a sick leave for a period of time long enough for her pension to vest.[1] Roush accepted this advice. Thereafter, she returned to the payroll department for a few weeks to a newly-created position.[2] On September 20, 1985, Roush was informed that she was being terminated because of poor work performance and failure to improve after repeated warnings. Roush was given the option of accepting early retirement in lieu of termination, and she elected to accept the early retirement. Roush was 61 years old at the time of her discharge.[3]

Roush filed this action against KFC in state court in September, 1986. Roush thereafter filed an amended complaint asserting a claim of discrimination on the basis of age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634. Roush's amended complaint also contained a pendent state law claim for intentional infliction of emotional distress. KFC filed a petition for removal on October 8, 1987. The case was tried to a jury, which returned a verdict in favor of Roush in the amount of $100,000 on her ADEA claim. In response to a special interrogatory, the jury also found that the discrimination against

Roush was willful. The jury additionally found in favor of Roush on her state law claim of intentional infliction of emotional distress, awarding damages on this claim in the amount of $50,000. Judgment was entered in accordance with the jury's verdict in the total amount of $150,000.

KFC thereafter moved for judgment notwithstanding the verdict ("j.n.o.v.") or, alternatively, for a new trial. Roush, in turn, made her own post-trial motion, requesting that the ADEA award be doubled as liquidated damages, based on the jury's finding of willful discrimination. The district court granted KFC's motion for j.n.o.v. on the issue of willfulness, but denied it on all other grounds. The court, having granted j.n.o.v. on the willfulness issue, also denied Roush's motion to double the ADEA award. KFC appealed.[4]

## II

■ KFC argues that the district court erred in denying its motion for j.n.o.v. on Roush's ADEA claim, because the evidence was insufficient to show that Roush's age, and not other, legitimate considerations, was a reason for her discharge. In our de novo review of the district court's denial of j.n.o.v., we must determine

... whether, viewing the evidence and reasonable inferences therefrom in the light most favorable to the non-moving party and without considering the credibility of the witnesses or the weight of the evidence, the only reasonable conclusion is a verdict against the nonmovant.

---

1. Crabb, who was subsequently terminated, filed her own ADEA action against KFC alleging that she was terminated in retaliation for assisting Roush. Crabb's action was consolidated with Roush's, although the jury denied her any recovery for her retaliation claim. The judgment in favor of KFC in Crabb's lawsuit was affirmed in a separate appeal filed in this court. *Crabb v. KFC Nat'l Management Co.,* 952 F.2d 403 (6th Cir.1992).

2. The position was called "Miss Anita Check," a play on the words "I need a check." Roush's duties in this position required her to field calls from districts or stores which needed help meeting their payroll. At trial, Roush testified that she had little to do in this position; she felt that

KFC created it as a ruse preliminary to firing her.

3. Due to the circumstances of her retirement, we will refer to Roush's retirement as her "discharge."

4. Roush has not appealed the district court's decision overruling the jury's finding of willfulness, and therefore that issue is not before us.

The district court made an award of attorneys' fees and costs to Roush, which is the subject of a companion case decided today, *Roush v. KFC Nat'l Management Co.,* 10 F.3d 390 (6th Cir. 1993).

*Moody v. Pepsi–Cola Metro. Bottling Co., Inc.,* 915 F.2d 201, 208 (6th Cir.1990) (citing *Erskine v. Consolidated Rail Corp.,* 814 F.2d 266, 269 (6th Cir.1987)).

▆▆ The ultimate issue in an age discrimination action is whether age was "a determining factor" in the employer's decision to fire the plaintiff. *Fite v. First Tennessee Prod. Credit Assn.,* 861 F.2d 884, 890 (6th Cir.1988); *Blackwell v. Sun Elec. Corp.,* 696 F.2d 1176, 1180 (6th Cir.1983). Roush must prove that "but for" KFC's discriminatory motive, she would not have been discharged. *Fite,* 861 F.2d at 889. This court has adopted a modified version of the guidelines established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) in age discrimination cases. Using these criteria, a plaintiff can establish a prima facie case by demonstrating that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a younger person. *Blackwell,* 696 F.2d at 1180. Once the plaintiff establishes a prima facie case, the defendant must then come forward with evidence of a legitimate, non-discriminatory reason for the discharge. The plaintiff must then carry the ultimate burden of proving by a preponderance of the evidence that the reasons offered by the defendant were a pretext for discrimination. *See Fite,* 861 F.2d at 890. The plaintiff may carry this burden either directly by persuading the jury that a discriminatory motive more likely motivated the employer, or indirectly by showing that the proffered reason is unworthy of belief. *Moody,* 915 F.2d at 208.[5]

▆▆ KFC does not dispute that the plaintiff established a prima facie case of discrimination. Moreover, although Roush suggests otherwise, KFC did offer evidence of a legitimate, non-discriminatory reason for Roush's discharge: poor performance. The real crux of this case is whether Roush carried her burden of proving that this reason was a pretext for age discrimination; in other words, whether she proved that she would not have been discharged but for her age. In support of its position that Roush was discharged for poor performance, KFC presented evidence that throughout her career with the company, Roush was informed in a number of performance reviews that her performance was inadequate in four areas: she did not follow company procedures; she did not properly prioritize her work; she spent too much time talking on the telephone; and her work area was disorganized. Roush also received four separate disciplinary notices, the first in December, 1982 for failing to follow departmental procedures. Four months later, in April, 1983, Roush was again put on probation when the following problem areas were identified in her work performance: communication and cooperation deficiencies; failure to perform work on a timely basis; too much talking on the telephone; failure to prioritize work; and failure to follow company standards and procedures. These same problems in Roush's performance were again documented in 1985, at a time closer to her discharge.

However, notwithstanding this evidence showing that problems had been identified in her performance, Roush demonstrated that her performance problems would not have led to her dismissal but for her age. First, we note that the same employment evaluations which KFC contends document certain inadequacies in Roush's performance also reflect overall ratings of her performance as either "meet[ing] expectations" or "exceed[ing] expectations." In addition, Roush presented evidence showing that her last immediate supervisor, Judy Sanders, referred to her using age-related, derogatory terms such as "old bag" or "old gummer." Finally, Roush presented testimony that a former supervisor, Ron Fantino, refused to recommend her for an assignment training other employees which required travel to Baltimore because she was "too old." Under the circumstances, a reasonable jury could have

---

5. The Supreme Court has recently stated that "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Saint Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

found that but for her age, Roush's employment with KFC would not have been terminated. We therefore conclude that the district court's partial denial of j.n.o.v. on Roush's ADEA claim was proper.

## III

KFC attacks the award of damages to Roush on her ADEA claim on two fronts. First, KFC argues that the award appears to have improperly included an amount representing front pay, although the court's instructions to the jury did not authorize such an award. Second, KFC argues that an award of front pay was improper in any event because the district court did not properly consider the preferred remedy of reinstatement in lieu of front pay, and because Roush simply did not establish her entitlement to such an award.

At the outset, we address an argument by Roush that the damages issues raised by KFC have not properly preserved for appeal. Roush contends that KFC did not object to any part of the extensive testimony offered by her at trial on damages. She also contends, with regard to KFC's argument that the jury's award did not conform with the court's instructions on damages, that this specific issue was not properly preserved because it was not mentioned in KFC's motion for j.n.o.v. or for new trial.

■■■ While an issue which is not presented at all to the district court may not be raised for the first time on appeal, *Young v. Langley*, 793 F.2d 792, 794 (6th Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 436, 93 L.Ed.2d 385 (1986), KFC did allow the district court to pass on the issue of the excessiveness of the damages by filing a rather extensive post-trial motion attacking various aspects of the ADEA damage award. More specifically, KFC argued in its motion for j.n.o.v. that the jury's damage award improperly included front pay. KFC also argued that the availability of front pay is limited and that the district court should have articulated a rationale for refusing to compel reinstatement. We therefore conclude that the damages issues have been properly preserved for appeal.

■■■ This court reviews the district court's decision on a motion for new trial seeking a remittitur of a jury's verdict for an abuse of discretion. *Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264, 268 (6th Cir.1989). Such a motion should be granted only "if the award *clearly* exceeds 'the amount which, under the evidence in the case, was the maximum that a jury could reasonably find to be compensatory' for the plaintiff's loss." *In re Lewis*, 845 F.2d 624, 635 (6th Cir.1988) (quoting *Manning v. Altec, Inc.*, 488 F.2d 127, 133 (6th Cir.1973)).

The parties disagree on whether the jury's $100,000 damage award included front pay.[6] KFC contends that the award must have included front pay, because even Roush's own evidence justified a back pay award totalling only $24,386. Roush, in turn, argues that it is impossible to say whether the award included a front pay component. We agree with KFC, for no rational appraisal of the evidence supports a back pay award of $100,000.[7]

6. The district court allowed the jury to return a general damage award on Roush's ADEA claim. Had the court intended to submit the issue of front pay to the jury, it would have been preferable to do so by special interrogatory, as this would facilitate our review. *See Blackwell*, 696 F.2d at 1185 n. 13 (discussing preference for use of special interrogatory on ADEA willfulness issue).

7. According to KFC's brief at p. 16, Roush's back pay damages of $24,386 consist of the following: (1) lost earnings from KFC of $77,848, minus interim earnings from her new employment of $41,481, and minus social security benefits of $25,954 and retirement benefits of $3,472 received as a result of her discharge; (2) lost contributions to KFC's savings plan amounting to six percent of lost earnings, or $4,671, plus a loss of return on this contribution in the amount of $1,509; (3) lost social security benefits of $5,053; and (4) lost retirement benefits of $6,212.

If the jury's award did not include front pay, then it was simply clearly excessive even using the figures supplied in Roush's own evidence. The jury's award of back pay was required to be reasonable and within the range of proofs in the case. *Drayton v. Jiffee Chem. Corp.*, 591 F.2d 352, 366 (6th Cir.1978).

■ We have approved front pay as an available form of equitable relief in ADEA actions. *Davis v. Combustion Eng'g, Inc.,* 742 F.2d 916, 923 (6th Cir.1984). KFC argues, however, that an award of front pay was improper because the district court did not properly consider whether to grant Roush the "preferred" remedy of reinstatement. This court has previously held that reinstatement is the presumptively favored equitable remedy. *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir.1988); *Henry v. Lennox Indus.,* 768 F.2d 746, 752–53 (6th Cir.1985). However, while reinstatement should be granted in the ordinary case, *In re Lewis,* 845 F.2d at 630, it is an equitable remedy which is not appropriate in every case, such as where the plaintiff has found other work, where reinstatement would require displacement of a non-culpable employee, or where hostility would result. *Henry,* 768 F.2d at 753. While Roush has never requested reinstatement and does not, even at this juncture, appear to be interested in reacquiring her former job, KFC has presented no evidence suggesting that it has ever offered reinstatement or that reinstatement is even a viable remedy given the apparent hostility generated in particular between Roush and Sanders.[8]

■ In our view, the more troubling aspect of this case is not the district court's failure to order reinstatement, which was neither offered nor requested, but rather its failure to determine, in advance of the submission of the issue of damages to the jury, whether an award of front pay was appropriate. Even if Roush did not seek reinstatement, she was not automatically entitled to an award of front pay. *See Davis,* 742 F.2d at 922–23 (stressing that front pay is "but one of a broad range of remedial measures available under the ADEA"); *but see Farber v. Massillon Bd. of Educ.,* 917 F.2d 1391, 1397 (6th Cir.1990) ("front pay is a remedy presumed appropriate unless record evidence clearly demonstrates to the contrary"), *cert. denied,* —— U.S. ——, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991).[9] We have previously held that determination of the amount of an award of front pay is a jury question. Specifically, in *Fite v. First Tennessee Production Credit Ass'n,* we stated that

> FTPCA's contention that front pay is not a question for the jury is at odds with the authority of this circuit. Indeed, *Davis* was an action where the jury determined the amount of front pay. In upholding the award of front pay, we noted that '[b]ased upon such determinations by the trial court, this court holds that the approval of the prospective damage award of $88,800 *as returned by the jury* was not an abuse of discretion.' *Davis,* 742 F.2d at 923 (emphasis added). Thus, we find that FTPCA's argument has no merit.

861 F.2d at 893.[10] However, we have also held that determination of the propriety of an award of front pay is a matter for the court. In *Davis,* we emphasized "that an award of front pay must be governed by the sound discretion of the trial court and may not be appropriate in all cases." 742 F.2d at 923.

■ We also agree with KFC that the district court's instructions to the jury did not authorize the jury to make an award of front pay. The district court's determination of whether an award of front pay is appropriate, and its articulation of the reasons why such an award is or is not appropriate, must

---

8. We have never held that a plaintiff must request reinstatement as a prerequisite to recovering front pay, and we decline to so hold in this case. At least one court has held that a plaintiff need not necessarily request reinstatement as a prerequisite to recovering front pay when reinstatement would be inappropriate. *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 730 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

9. In the sex discrimination context, we have stated that "an award of front pay is *sometimes* appropriate in order to effectuate fully the 'make whole' purposes of Title VII." *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1159 (6th Cir. 1985) (emphasis supplied).

10. The circuits are split on the issue of whether to characterize the calculation of front pay as a legal issue for the jury or an equitable issue for the court. *See generally Denison v. Swaco Geolograph Co.,* 941 F.2d 1416, 1425–26 (10th Cir. 1991) (collecting cases); *Duke v. Uniroyal Inc.,* 928 F.2d 1413, 1421–22 (4th Cir.) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).

ordinarily precede its submission of the case to the jury. This case highlights the most obvious reason why: because the jury must be instructed on what factors to consider in determining the amount of front pay, assuming that the court finds such an award is in order. We have previously stated that awards of front pay must be guided by consideration of certain factors, including

> an employee's duty to mitigate, 'the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damage awards.'

*Shore v. Federal Express Corp.*, 777 F.2d 1155, 1160 (6th Cir.1985) (quoting *Koyen v. Consolidated Edison Co.*, 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983)).

■■■ In this case, the district court did not articulate, in advance of submitting the case to the jury, whether it deemed an award of front pay to be appropriate, and its jury instructions neither authorized an award of front pay nor offered any guidance as to how the jury should determine the amount of such an award.[11] Instead, the first express indication of the district court's view of the propriety of front pay appears in its order on the post-trial motions, in which the court stated:

... While criticizing Roush for failing to seek reinstatement, KFC has not suggested in any way that reinstatement would be a realistic possibility. We find, therefore, that an award of front pay can properly be made in this case from the evidence presented by Roush. ... Further, we find nothing in the provisions of ADEA which precludes projection of damages to age 75. There was some evidence offered by Roush regarding her need to continue working in order to provide for her handicapped child. This evidence supports her contention that she would remain in the workforce for an extended period of time....

KFC would have the court speculate at this late date as to the various components of damage of which the award is comprised. KFC did not request that interrogatories or a detailed verdict form be given to the jury in order to have the award parsed out. It is sufficient for our purposes that we find substantial evidence offered by Roush and that there is some basis in the record for the damage award. Front pay, back pay, and various benefits identified could all properly be considered by the jury in reaching its verdicts....

While we review the district court's decision determining the propriety of an award of front pay for an abuse of discretion, *see Shore*, 777 F.2d at 1159 (front pay award

---

11. The only instruction which the court gave to the jury on the issue of ADEA damages for Roush stated as follows:

> Now, if you find for Mrs. Roush, you will award her damages for lost income and benefits which she incurred as a result of her discharge, deducting therefrom any sums which you may find she has received since the date of her discharge.

Transcript at 563. Although this instruction is cursory, KFC is correct that as given, the instruction does not appear to authorize an award of front pay. While Roush has argued that this instruction may be construed as a front pay instruction, we note that the district court apparently declined to give an instruction tendered by Roush which clearly authorized an award of front pay. This tendered instruction read as follows:

> If you have determined that the Plaintiff Betty Roush was discriminated against because of her age by the Defendant, then you must determine the amount of damages sustained by her.

> Normally speaking, a person who is a victim of illegal age discrimination is entitled to be restored or reinstated to the position she would have been in but for the discrimination with all lost monies and benefits. For such an individual the appropriate measure of damages is the amount of lost salary from the date of the her [sic] termination through the date of trial and future lost salary to the date that you believe she will stop working in the future.... This instruction allows you to award both back pay, that is pay from the date of her termination to the present and front pay, that is the payments she would have from the date of the trial until her retirement age.

In view of those factors which *Shore* requires to be considered in determining an award of front pay, 777 F.2d at 1160, we cannot share Roush's strained interpretation of the district court's given instruction as authorizing an award of front pay.

"must be governed by the sound discretion of the trial court"), we cannot condone the *ex post facto* determination made by the district court in this case. The district court, having previously refused to give a front pay instruction to the jury, nonetheless approved an apparent award of front pay by the jury, based only on testimony by the plaintiff that she intended to remain in the workforce beyond the usual retirement age. This backward approach resulted in the jury being given virtually no guidance in determining the amount of the front pay award.

■■■ While ordinarily we would remand the issue of front pay to the district court for a more detailed articulation of the reasons for its action (and, alternatively, for a new trial on the issue of front pay), we conclude that a remand in this case would serve no purpose, because the record simply does not support an award of front pay in any amount. Roush has failed to articulate how the evidence in this case supports an award of front pay, and we fail to see the justification for such an award. Within approximately two months of her discharge from KFC, Roush accepted a full-time position with the Bauer–Sharp Company, at a salary comparable to that which she had earned at KFC (albeit without benefits). Although by the time of trial her hours at Bauer–Sharp had been reduced to part-time for apparent business reasons, Roush voluntarily chose not to seek alternative or supplemental employment in order to make up for this reduction in her income, preferring instead to receive social security benefits.[12] Based upon these facts, we conclude that as a matter of law, front pay was not appropriate in this case. In its order on post-trial motions, the district court found that an award of front pay was appropriate because Roush had contended that she would remain in the work force on an extended basis due to her need to provide for a handicapped child. However, her intentional limitation of her income in order to continue receiving social security benefits terminates any entitlement to front pay which she may otherwise have had. *See Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1258 (2d Cir.1987) (plaintiff's failure to mitigate may foreclose availability of front pay).

Based on the proofs presented at trial by Roush, her damage award for back pay should be reduced to $24,386, which is the maximum amount a jury could reasonably find to be compensatory for her loss. This amount includes lost earnings between the date of her discharge and the time of trial (less interim earnings obtained from other employment and pension and social security benefits which Roush received as a result of her discharge); lost contributions to KFC's savings plan; lost social security benefits; and lost retirement benefits.[13] We remand for entry of judgment in this amount.

## IV

■■■ KFC argues that the district court erred in failing to grant j.n.o.v. on Roush's state law claim of intentional infliction of emotional distress, otherwise known as the tort of "outrage," because the evidence was insufficient as a matter of law to meet Kentucky's strict standard for establishing this tort. We agree.

---

12. When asked why she had gone from earning $10,040 from Bauer–Sharp in 1986 to only $7,000 in 1987, Roush testified:

> ... They asked me if I would go part-time and I went that way. Then I was able to start collecting my Social Security....
> I couldn't earn more. If I did, they would take it away from me, my Social Security.

Joint Appendix at 462–63.

13. Roush argues that there was testimony presented that she was the lowest paid person in the department and that her pay raises were "considerably less" than those of others in the department. Based upon this testimony, she contends, "[t]he jury may well have decided that as part of her back pay that situation should be remedied.

If they did, it could easily have brought a back pay award, considering all elements, to in excess of $100,000." Appellee's Brief at p. 15. However, Roush fails to cite to evidence in the record substantiating any amounts by which she was allegedly underpaid, and we conclude that the jury would necessarily have had to speculate in order to award back pay totalling $100,000 on this basis. *See Rodgers v. Fisher Body Division, General Motors Corp.*, 739 F.2d 1102, 1107 (6th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985) ("Although juries are ... accorded great discretion in determining the amount of damage awards, damages must be proved; they must not be speculative.").

Kentucky has recognized that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky.1984). However, the standard for proving liability for this tort is particularly stringent, requiring proof of conduct which goes beyond " 'all possible bounds of decency.' " *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky.1990) (citation omitted). Roush's outrage claim is essentially based on testimony showing that she was subjected to derogatory remarks about her age (many of which were made behind her back); that she had to perform certain disfavored tasks more than other employees [14]; that she had to eat lunch by herself because her supervisor told other employees not to eat with her; that she was not allowed to keep extra work supplies at her desk, thus forcing her to walk to the supply room despite the fact that she suffered from arthritis; and that some of her personal belongings were removed from her desk and placed in storage during a sick leave. Even when considered in their totality, these actions do not amount to "extreme and outrageous conduct" justifying imposition of liability for the tort of outrage in this case. Indeed, in far more extreme situations than that presented by Roush, the facts have been held to be legally insufficient to establish commission of the tort. *See id.* (plaintiff, who delivered stillborn baby alone in hospital bed, was told by nurse to "shut up" in response to pleas for help, and was told that baby would be "disposed of" in the hospital when she asked where dead baby was being taken). We conclude that under Kentucky law's stringent standards, no reasonable juror could conclude that Roush established the tort of outrage, and we therefore reverse the district court's denial of j.n.o.v. on this claim.

## V

For the foregoing reasons, we **AFFIRM** the judgment **IN PART, REVERSE IN PART, and REMAND** for entry of judgment consistent with this opinion.

---

14. One such task involved the tearing of computer printouts. Roush testified that performing this task was difficult for her because it required her to stand, even though she suffered from arthritis. However, the testimony showed that Roush was relieved of performing the task in a standing position upon presentation of a note from her doctor.