# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 01-2090

_____

| | |
|---|---|
| Paul R. Yancey, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| vs. | *  Appeal from the United |
| | *  States District Court |
| Weyerhaeuser Company, | *  for the Western District |
| Individually and d/b/a | *  of Arkansas |
| DeQueen & Eastern Railroad Co., Inc. | * |
| | * |
| Defendant-Appellant. | * |
| | * |

_____

Submitted: December 12, 2001
Filed: January 24, 2002 (Corrected 2/8/02)

_____

Before LOKEN and BYE Circuit Judges, and BOGUE,[1] District Judge.

_____

BOGUE, District Judge.

Weyerhaeuser appeals a jury verdict and an order of reinstatement in an age discrimination case brought by Paul R. Yancey pursuant to the Age Discrimination

_____

[1] The Honorable Andrew W. Bogue, United States Senior District Judge for the District of South Dakota, sitting by designation.

in Employment Act. The jury determined Weyerhaeuser willfully discriminated against Yancey and awarded him $169,625. The District Court[2] subsequently awarded Yancey reinstatement and attorney fees.

Weyerhaeuser raises five issues on appeal. First, that the evidence presented at trial was insufficient to establish a prima facie case of age discrimination. Second, that there was insufficient evidence of pretext and intentional discrimination to uphold the underlying judgment. Third, that Yancey failed to mitigate his damages, therefore, his back pay should be reduced. Fourth, that the District Court's order awarding equitable relief was in error. Fifth, that the District Court erred by refusing Weyerhaeuser's business judgment instruction. After careful consideration of these issues, we affirm the judgment of the district court.

Yancey began working for the DeQueen and Eastern Railroad on July 16, 1966. The Railroad was soon thereafter acquired by Weyerhaeuser. Yancey rose to the position of general maintenance foreman, also known as a Roadmaster. As Roadmaster, Yancey's primary responsibility was management of a crew that maintained railroad tracks and bridges.

Yancey's son, Paul Yancey, Jr., was hired by the Railroad in March of 1993, to work on the Maintenance of Way section crew.[3] Yancey, Jr., reported to a "lead man" on the section crew. Lead men managed the day-to-day operations of the Maintenance of Way crew members and reported to Paul Yancey for instructions on work assignments. Paul Yancey did not influence the pay or promotion of his son.

---

[2]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

[3]The hiring committee that selected Yancey, Jr., included Marsha Paslay, the human resource manager, and Paul Yancey. Paul Yancey recused himself from consideration of his son. All other members of the committee knew of the familial relationship.

All pay increases were effective for every member of the Maintenance of Way Department. Additionally, each pay increase had to be approved by J.D. Ventrcek, Vice President and General Manager of the railroad, and Lynn Endicott, Weyerhaeuser Vice-President, Southern Lumber Division.

On February 2, 1998, Ventrcek told Yancey Sr., that one member of the family had to leave the employment of the railroad. Yancey was also told that he would receive a severance package only if he allowed Weyerhaeuser to downgrade his personnel file to reveal marginal performance, but under no circumstances would his son receive a severance package. Ventrcek then told Yancey that there was no reason for him to attend a mandatory staff meeting later that afternoon.

Later that evening, Marsha Paslay, from the human resources office, called Yancey at home and told him to pick up the severance package that day because he had a limited amount of time to determine if he would accept it. The package included a letter stating the amount he would be paid upon termination, and a release of claims against Weyerhaeuser under the ADEA.

Yancey returned to work the following day and met with Ventrcek and Paslay. Yancey told them he thought he had been terminated based upon his meeting with Ventrcek and the severance letter. After Ventrcek informed Yancey he had not been terminated, Yancey stated that he wanted to work. Ventrcek immediately told Yancey to turn in his keys and all of his company property, clean out his desk, and leave the premises under Paslay's escort.

Yancey was replaced by Glen Blackney, age 43. Blackney was the youngest member of the management team. After his termination, Yancey tried unsuccessfully to find employment. He has a ninth grade education, limited job skills, and lives in a very small town in southern Arkansas.

# I.

Weyerhaeuser asserts the evidence was insufficient to establish a case of age discrimination. This Court's review of a jury verdict is deferential, and a verdict will not be reversed for insufficient evidence unless no reasonable juror could have returned a verdict for the non-moving party. See Ryther v. KARE II, 108 F.3d 832, 836 (8th Cir. 1997), cert. denied, 521 U.S. 1119 (1997). The evidence is considered in the light most favorable to Yancey, assuming all conflicts in the evidence were resolved in his favor, and providing him the benefit of all favorable inferences that may be drawn from the proven facts. See Hathaway v. Runyon, 132 F.3d 1214, 1220 (8th Cir. 1997).

Weyerhaeuser contends Yancey's claim cannot succeed because Yancey chose to resign. The facts do not support this assertion. Without notice or warning, Weyerhaeuser told Yancey that either he or his son had to quit the railroad. Weyerhaeuser stated they could not help his son, but offered Yancey a severance package if he allowed the railroad to downgrade his personnel file. Weyerhaeuser insisted that Yancey make his decision that day. Before Yancey made a decision, he was told there was no point for him to attend a mandatory staff meeting that afternoon. Yancey picked up his severance package that same day, but returned to work the next day. Yancey was then told he must turn in his keys, clean out his desk, and was escorted off the premises. These facts support the jury's determination that Yancey was forced to resign.

# II.

Weyerhaeuser's next assertion is that it let Yancey go because of the company's nepotism policy. The jury determined the nepotism policy was mere pretext, and the evidence supports this decision. Although several other familial

relationships existed within Weyerhaeuser, no evidence was presented that the nepotism policy had ever been used to terminate another employee. Additionally, the Yanceys worked together for five years. Weyerhaeuser was at all times aware of the relationship. The jury could also have been persuaded by the haste in which the decision was made. Yancey was told he had to make a decision that day, and had to sign a waiver releasing his rights under the ADEA. The jury chose to credit Yancey's evidence and testimony over Weyerhaeuser's assertions. That is the jury's right, and there is insufficient evidence to overturn its decision. See Gardner v. Buerger, 82 F.3d 248, 251 (8th Cir. 1996). The jury did not believe Weyerhaeuser terminated Yancey because of its nepotism policy.

## III.

Weyerhaeuser asserts that Yancey failed to mitigate his damages, therefore, his back pay should be reduced. A wrongfully discharged employee has a duty to mitigate his damages. See Denesha v. Farmers Ins. Exch., 161 F.3d 491, 502 (8th Cir. 1998), cert. denied, 526 U.S. 1115 (1999). Yancey must make reasonable efforts to minimize his damages by attempting to find a new job. See Henderson v. Simmons Foods Inc., 217 F.3d 612, 616, 617 (8th Cir. 2000).

Yancey first attempted to find work at the DeQueen & Eastern Railroad, in a position that would not violate Weyerhaeuser's nepotism policy, but the railroad refused. Next, Yancey enrolled with the railroad retirement board. The railroad retirement board has a nationwide computer system that allows employers to access information on potential applicants. Yancey also continued to monitor the DeQueen classifieds, but all attempts to locate employment have been unsuccessful.

Yancey has a ninth grade education, limited job skills, and lives in a small town in southern Arkansas. Yancey's job skills were formed during his 31 year career as

5

a railroad employee. It was not unreasonable for the jury to find that Yancey had made a reasonable effort to mitigate his damages by finding employment.

## IV.

Weyerhaeuser contends it should not be required to reinstate Yancey to the position of Roadmaster due to its nepotism policy. The district court's decision to order reinstatement is reviewed for an abuse of discretion. See Williams v. Kisko, Inc., 964 F.2d 723, 730 (8th Cir.1992), cert. denied, 506 U.S. 1014 (1992). Equitable relief in an ADEA case is a remedy fashioned upon the consideration of all relevant circumstances. See Gibson v. Mohawk Rubber Co., 695 F.2d 1093, 1099 (8th Cir. 1982). The district court did not abuse its discretion by reinstating Yancey.

The district court determined Weyerhaeuser voluntarily violated its nepotism policy by hiring Yancey's son. Weyerhaeuser then allowed the relationship to continue for five years, and even encouraged the relationship by knowingly placing the Yanceys in the same unit. The district court found Weyerhaeuser tolerated the relationship for five years because it either chose to ignore the relationship, or because it tacitly approved of the relationship. Either way, the district court did not abuse its discretion in finding that Weyerhaeuser effectively waived its nepotism policy.

## V.

Weyerhaeuser's final argument is that the district court erred by refusing Weyerhaeuser's business judgment jury instruction. The district court's jury instructions are reviewed for abuse of discretion, and the issue is whether the instruction fairly and adequately submitted the issue to the jury. Karcher v. Emerson Elec. Co., 94 F.3d 102, 510 (8th Cir. 1996), cert. denied, 520 U.S. 1210 (1997). Instead of using the instruction proposed by Weyerhaeuser, the Court used the

6

standard Eighth Circuit Model Jury Instruction for business judgment. The use of the Eighth Circuit's Model Jury Instruction was not error as it fairly and adequately submitted the issue to the jury.

Accordingly, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

7