RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0233p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

TONY A. GUNTER,

        *Plaintiff-Appellee/Cross-Appellant*,

    *v.*

BEMIS COMPANY, INC.,

        *Defendant-Appellant/Cross-Appellee*.

Nos. 17-6144/6185

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:16-cv-00037—Travis R. McDonough, District Judge.

Argued:  October 2, 2018

Decided and Filed:  October 16, 2018

Before:  GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Jonathan O. Harris, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee, for Appellant/Cross-Appellee.  Adam W. Hansen, APOLLO LAW LLC, Minneapolis, Minnesota, for Appellee/Cross-Appellant.  **ON BRIEF:**  Jonathan O. Harris, Thomas W. Whitworth, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Nashville, Tennessee, for Appellant/Cross-Appellee.  Adam W. Hansen, APOLLO LAW LLC, Minneapolis, Minnesota, Heather Moore Collins, COLLINS & HUNTER PLLC, Brentwood, Tennessee, for Appellee/Cross-Appellant.

───────────────

## OPINION

───────────────

SUTTON, Circuit Judge.  Tony Gunter injured his shoulder on the job.  After Gunter had surgery to repair the injury, his doctor imposed work restrictions.  Thinking the restrictions

prevented him from performing his job, his employer, Bemis Company, fired Gunter. Gunter sued, alleging Bemis violated the Americans with Disabilities Act. A jury ruled in favor of Gunter and awarded him damages, some of which the district court reduced. The parties cross-appealed. We affirm in part, reverse in part, and remand for further proceedings.

I.

Bemis prints material used as graphics on the outside of Huggies diapers. Gunter started working at Bemis's predecessor company in 1989, and Bemis acquired the company in 1997. In January 2013, Gunter injured his right shoulder while working as a press assistant for the company. Gunter continued to work while going to physical therapy for six months, but his shoulder didn't improve. Bemis referred Gunter to Dr. Garside, who performed surgery on his shoulder in August 2013.

Gunter returned to light duty a month or two later. A few months after that, in December 2013, he returned to his job as a press assistant with temporary restrictions: no reaching with his right arm and no performing overhead work.

In May 2014, Bemis sent Gunter to complete a functional capacity evaluation as part of processing his workers' compensation claim. The evaluator determined that Gunter could perform jobs with light physical demands. Based on the requirements in Bemis's job description, however, Gunter needed to be able to do jobs with medium physical demands. The evaluation concluded that Gunter did not satisfy "the strength/lifting/carrying or the right [upper extremity] positional demands of his job." Pl.'s Ex. 10 at 1; Appellant's App. 7.

Bemis received a copy of the evaluation but allowed Gunter to continue working with a temporary no-overhead-work restriction while Dr. Garside reviewed the report. In June 2014, Dr. Garside authorized Gunter to return to regular duty with these restrictions: Gunter could not work overhead with his right arm, could lift up to 40 pounds occasionally and 20 pounds frequently from the floor to his waist, could lift up to 20 pounds occasionally from his waist to his chest, could not lift overhead, and could occasionally outstretch his right arm. Bemis received the report, and Gunter continued working.

On July 2, Bemis placed Gunter on paid leave, reasoning that it could no longer accommodate his restrictions.  On July 18, the HR manager and the health and safety manager met with Gunter for about an hour to discuss the situation.  Gunter remained on leave after the meeting.  Bemis fired Gunter on November 3, 2014, however.

Gunter filed this lawsuit, alleging that Bemis violated the Americans with Disabilities Act.  After a five-day trial, the jury returned a verdict in Gunter's favor, finding that Bemis violated the Act by firing Gunter because of his disability, by failing to accommodate his disability, and by failing to engage with him in the interactive process.  The jury awarded Gunter $181,522.61 in back pay, $92,000 in compensatory damages, and $315,000 in front pay.  The district court modified the judgment in part, eliminating the damages for lost insurance benefits. Bemis appealed, and Gunter cross-appealed.

II.

The company challenges the judgment on three grounds:  (1) Gunter cannot perform the essential functions of the job and therefore is not entitled to any relief; (2) the front-pay and back-pay awards should be reduced because Gunter did not mitigate his damages; and (3) the district court erred in instructing the jury about the possibility of front pay.

*Liability*.    Bemis claims that the Act does not apply because, in the aftermath of Dr. Garside's restrictions, Gunter could not do the job.  On this record, that was the jury's call, not ours.

Under the Act, an employer may not discriminate against a "qualified individual" because of his disability.  42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position."  *Id.* § 12111(8).  Through it all, an employee still must be able to perform the "fundamental job duties."  29 C.F.R. § 1630.2(n)(1).

At stake at this stage of the case is whether the doctor's restrictions mean that Bemis wins as a matter of law, even after viewing the evidence in the light most favorable to Gunter.  Fed. R.

Civ. P. 50(a)(1). As we see it, a reasonable jury could determine, based on the evidence presented at trial, that Gunter still could perform the essential duties of the job.

Press assistants generally ensure that Bemis's printing presses operate properly. They load raw materials and gears onto the press and fill the press with ink. They take the printed material off the press and inspect its quality. They also solve mechanical problems and "reweb" the press if material gets jammed. R. 140 at 75.

The jury heard evidence that Gunter met the job's lifting requirements. With his restrictions, Gunter could lift 40 pounds from the floor to his waist up to one-third of the time. Other evidence showed that Bemis encourages employees not to lift anything over 40 pounds by themselves. The jury also heard that Bemis has lifting equipment that employees can use to lift many objects, even if an object weighs as little as 20 pounds. Press workers must lift ink buckets that weigh 20 to 30 pounds and gears that weigh between 15 and 40 pounds. But employees can ask their coworkers to help lift the heavier gears and often do. In fact, some smaller employees had asked Gunter for help carrying heavier equipment, including the gears. Employees also use ladders for equipment that needs to be lifted higher, establishing an option for workers, like Gunter, who could not lift over their waist.

The jury also heard evidence that Gunter could do the other parts of his job, even after accounting for limits on working over his head with his right arm and outstretching his right arm. Evidence showed that press assistants do not need to do overhead work, and Gunter learned to use his left arm to complete other duties.

That is all well and good, Bemis counters, but the reality remains that Gunter's functional capacity evaluation and Dr. Garside's report precluded him from satisfying the requirements of a press assistant, including lifting 45 pounds and reaching 24 inches. Even if we take a doctor's restrictions at face value, however, they do not dictate the essential functions of a job. The jury heard evidence from several witnesses that Gunter could handle the fundamental duties of a press assistant with these restrictions.

That helps to explain why *Johnson v. Cleveland City School District*, 443 F. App'x 974 (6th Cir. 2011), and *Manigan v. Southwest Ohio Regional Transit Authority*, 385 F. App'x 472

(6th Cir. 2010), do not help Bemis. In those unpublished cases, the employees offered only their own testimony to rebut the medical restrictions. They did not show how the company and its other employees treated the necessary job requirements.

Although an employer's job description provides evidence of a job's essential functions, 42 U.S.C. § 12111(8), it is "not dispositive," *Rorrer v. City of Stow*, 743 F.3d 1025, 1039 (6th Cir. 2014). Yes, Bemis presented evidence that it carefully composed the press assistant job description. But the jury also heard evidence that these requirements were not essential, and the company and other employees did not treat them as essential.

Bemis adds that Gunter cannot establish his qualifications for the job based on the option that *other* employees could help lift heavy equipment. Employers, it is no doubt true, need not "accommodate individuals by shifting an essential job function onto others." *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2000). But the argument assumes that these tasks amount to essential functions that a single employee must be able to handle. The jury heard evidence to the contrary—that press workers often ask for and receive help with certain tasks—permitting it to find that this was not an indispensable task for individual employees. *See Camp v. BI-LO, LLC*, 662 F. App'x 357, 362–63 (6th Cir. 2016). In the last analysis, Gunter presented sufficient evidence to create a triable issue of fact over the essential job requirements of a press operator, making the final resolution one for the jury, not for us.

*Mitigation of Damages*. Bemis asks us to vacate the back-pay and front-pay awards because Gunter did not mitigate his damages. The premise of this argument is correct; the conclusion is not.

The Act requires an employee to use reasonable diligence to mitigate damages. To that end, it limits back-pay and front-pay awards by the "amounts earnable with reasonable diligence by the person . . . discriminated against." 42 U.S.C. §§ 2000e-5(g)(1), 12117(a); *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 799–800 (6th Cir. 2018). The employee bears the initial burden of proving damages with "reasonable certainty." *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1192 (6th Cir. 1983). If he meets that requirement, the employer must show that the employee failed to mitigate damages by showing that (1) similar

positions were available; and (2) the employee did not "use reasonable care and diligence in seeking such positions." *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983).

Measured by this standard, the company loses. Gunter proved his damages with reasonable certainty. There was sufficient evidence for a reasonable juror to find that Gunter used reasonable diligence in his job search. Gunter quit school after eighth grade and has never learned to read more than a few words or short phrases. Nonetheless, he inquired about jobs at AutoZone, Advanced Auto Parts, and O'Reilly Auto Parts because he had an affinity for cars and enjoyed working on them as a hobby. All three rejected Gunter based on his limited education and limited reading ability. Gunter asked about driving a truck or working as a mechanic for either the city or the county. But Gunter could have worked there only for a few hours a week and would have been paid minimum wage. Gunter and his wife discussed a few possibilities at local stores but determined that only the owners' family members worked at them. Gunter could not read the newspaper or search the internet for other options. Bemis would not have even considered Gunter if he had reapplied for his press assistant position because Bemis requires all new applicants to have a GED or high school diploma. Based on that evidence, the jury could have determined Gunter used the requisite care and diligence. And Bemis did not show the availability of substantially equivalent positions.

Bemis urges us to scrap the two-part requirement and adopt a rule embraced by some other circuits that an employer need not prove similar jobs were available if it shows that the employee was not diligent. *See, e.g.*, *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 16 (1st Cir. 1999); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998). *But see Stragapede v. City of Evanston*, 865 F.3d 861, 868–69 (7th Cir. 2017).

We have not explicitly addressed this argument, and we need not do so today. The argument would make not a difference anyway. As shown, there was sufficient evidence for a reasonable jury to find that Gunter used reasonable diligence in his job search, meaning that Bemis would lose even without this two-part test.

*Reinstatement or Front Pay*.  Bemis argues that the district court erred in giving the jury the option of awarding front pay rather than reinstating Gunter.  We agree.

The law treats reinstatement and front pay as alternative remedies.  A prevailing employee may receive one but not both.  *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996).  Reinstatement is the "favored" remedy and "should be granted in the ordinary case."  *Roush v. KFC Nat'l Mgmt. Co.*, 10 F.3d 392, 398 (6th Cir. 1993).  The district court takes the first cut at the possibility of front pay, and we review its decision for an abuse of discretion.  *Arban v. West Publ'g Corp.*, 345 F.3d 390, 406 (6th Cir. 2003).

After closing arguments, the district court explained why it would not give the jury the option of reinstatement.  Even though Gunter "testified that he would like to have his job back," the court noted that Bemis "put on proof that it's not, in its opinion, safe" to reinstate him. R. 144 at 2.  Bemis objected, noting that reinstatement remains the preferred remedy, that it had not offered to reinstate Gunter because of its belief that he could not perform his job with his restrictions, and that it would reinstate Gunter if the jury found he could do the job.

The district court did not offer a sufficient reason for taking reinstatement—the presumptive remedy in this setting—off the table.  On the employee's side, Gunter testified that he wanted his job back at Bemis and would return if he could.  When asked if he wanted front pay, Gunter replied:  "No, I'd rather have my job in the future."  R. 140 at 161.  On the employer's side, there was no evidence of hostility between the company and Gunter.  And Bemis acknowledged that it would reinstate Gunter if the jury found him qualified for his position.

The district court's rationale for taking reinstatement off the table—that Gunter might not be able to work safely as a press assistant—ends at the bottom of a long and icy slope.  The key question of fact for the jury in this case was that precise question.  Once the jury found that Gunter could perform the essential functions of the job and once the trial judge left that finding in place after ruling on the company's post-trial motions, that explanation no longer made any sense as a ground for precluding reinstatement.  Any other approach would unsettle, if not entirely upend, the presumption in favor of reinstatement.  Put another way, we cannot quarrel

with the option Bemis presented:  Reinstatement would not work if the company correctly sized up Gunter's ability to handle the job, and it would work if the jury ruled for Gunter on this point. Companies and employees are permitted to argue in the alternative.  And courts should not hold it against them or, worse, punish them for pressing one horn of a dilemma before the other.

*Roush v. KFC National Management Co.* does not alter our conclusion.  A jury found that KFC illegally fired Roush because of her age, relying in part on evidence that her supervisor and other employees mocked her because of her age before KFC fired her.  10 F.3d at 394–95.  The finding of liability in that case thus turned in part on hostility between the employer and employee. *Id.* at 398.  Not true here.  Plus, KFC never offered to reinstate Roush, whether before the verdict or after it. *Id.*  Not true here either.  *Roush* does not create the paradox of requiring employers to say how they would prefer to lose before the jury decides whether they lose. Gunter wanted his job back, and Bemis agreed to give it to him if the jury believed he could handle it.  That is the textbook setting for honoring the presumption in favor of reinstatement.

For the first time on appeal, Gunter points to evidence that favors front pay as the exclusive remedy.  But most of the evidence is simply the company's position on the key issue of fact—his physical abilities to handle the job—which the jury necessarily rejected.  Gunter adds that reinstating him might displace workers, pointing to evidence that Bemis had no open positions for forklift drivers when Gunter met with two Bemis managers on July 18 to discuss possible accommodations.  But the absence of forklift driver positions in 2014 says nothing about the availability of press assistant positions at the time of trial.  Gunter also points to evidence that reinstatement would result in hostility, pointing to his wife's testimony that he was "very upset" when Bemis fired him.  R. 142 at 204.  But that is a human, largely omnipresent, reaction to being fired, and plenty of evidence shows that Gunter never wanted to leave Bemis and wished to return if he could.

The district court should have instructed the jury on reinstatement instead of front pay. We therefore vacate the front-pay award.  We learned at oral argument that Bemis has closed its plant since the trial ended.  Under these circumstances, the parties agree that Gunter should be entitled to front pay from the time of trial until the plant closed.  *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  On remand, the district court can determine the

appropriate front-pay award for that period.  In addition, the district court may reopen the record to determine what other remedy might be appropriate given that Gunter should have been an employee when the plant closed.  For example, it might consider whether Bemis offered its employees severance packages or whether Bemis gave any then-current employees options to transfer to other Bemis plants.

III.

Gunter also filed a cross-appeal, arguing that the district court erred in reducing his damages for lost insurance benefits.

*Jurisdiction*.  The timing of Gunter's notice of cross-appeal raises a jurisdictional question.  The district court entered its final judgment on August 30.  Bemis timely filed its notice of appeal on September 27.  Gunter filed his notice of cross-appeal on October 3—inside the 14-day window created by Appellate Rule 4(a)(3) for filing a notice of cross-appeal but potentially outside the 30-day window in 28 U.S.C. § 2107 for filing a notice of appeal.

We cannot look the other way when it comes to subject-matter jurisdiction.  It establishes—or fails to establish—our authority to decide a case, triggering an unflagging duty to make sure we have it.  *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2018).  Nor can the parties look the other way.  They cannot forfeit or waive subject-matter jurisdiction.  *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434–35 (2011).

In recent years, the Supreme Court has set a course of correcting the once profligate, and incorrect, use of "jurisdiction."  *Hamer*, 138 S. Ct. at 17–18; *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006).  So have we.  *Int'l Union of Operating Eng'rs, Local 18 v. NLRB*, 837 F.3d 593, 595–96 (6th Cir. 2016); *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011).

Two lessons grow out of these cases.  One is that Congress must "clearly" state that a provision creates a jurisdictional limitation before we will treat it as one.  *Arbaugh*, 546 U.S. at 515.  The other is that only deadlines reflected in statutes, not those spelled out just in the Federal Rules of Appellate Procedure, count as jurisdictional.  *Hamer*, 138 S. Ct. at 20.  Deadlines found only in the Federal Rules or time deadlines that do not clearly act as limitations

on a federal court's authority amount to claim-processing rules—mandatory all the same but forfeitable and waivable by the parties. *Id.* at 17. If parties properly invoke them, we will enforce them. *Id.*

Measured by these requirements, a timely notice of appeal is a jurisdictional requirement. *Bowles v. Russell*, 551 U.S. 205, 210–13 (2007). But a timely notice of cross-appeal is not.

28 U.S.C. § 2107(a) states that "no appeal shall bring any judgment . . . before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment." The statute clearly sets a jurisdictional deadline with respect to a notice of appeal. But it says nothing about cross-appeals. That should not come as a surprise. Many cross-appellants keep the case going only if the other party appeals. No one wants to force parties to file a notice of cross-appeal within the same timeframe as the notice of appeal. Otherwise, gamesmanship and confusion would reign, prompting appeals that might never have been filed. All in all, Congress's silence about cross-appeals in § 2107 means that any deadlines created by the statute are not jurisdictional with respect to them.

Rule 4 of the Federal Rules of Appellate Procedure instead governs cross-appeals. It states in part: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later." Fed. R. App. P. 4(a)(3). Under this claim-processing rule, a party must file notice of its cross-appeal within 14 days of the initial notice of appeal or within 30 days of the district court's final judgment. Gunter did just that. He filed his notice of cross-appeal six days after Bemis filed its timely notice of appeal.

A 1967 case, we recognize, suggests a different result. *Richland Knox Mut. Ins. Co. v. Kallen*, 376 F.2d 360, 363–64 (6th Cir.). It required a timely notice of cross-appeal under § 2107 before exercising "jurisdiction" over the cross-appeal. *Id.* But time has passed by *Kallen*'s jurisdictional ruling. Over the last twenty years, one Supreme Court decision after another instructs the lower courts to be more judicious about labeling deadlines jurisdictional. *E.g.*, *Henderson*, 562 U.S. at 434–35; *Arbaugh*, 546 U.S. at 510. Because Congress has not clearly required a timely notice of cross-appeal for a court to exercise jurisdiction over it, Federal

Appellate Rule 4(a)(3) establishes only a mandatory claim-processing rule, not a limit on our jurisdiction.

*Lost Benefits*.  Gunter maintains that the district court erred in reducing the jury's award for lost benefits.  To make an employee whole, damages awards should account for fringe benefits that he did not receive after being forced out of a company.  *Rasimas*, 714 F.2d at 626.  Courts and juries must calculate lost-benefits awards based on actual expenses that an employee incurs in obtaining other insurance or in receiving care that would have been covered, not based on the value of the lost benefits.  *Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 522 (6th Cir. 2009).

The district court properly reduced Gunter's back-pay award to exclude damages for lost benefits.  Gunter and his wife testified that he joined her medical and dental insurance plans in July 2014, but the record contains no evidence showing how much Gunter paid to join his wife's plan.  Gunter also offered no evidence that he spent money on medical or dental care that his Bemis insurance would have covered.  Gunter had the burden of proving his actual expenses with reasonable certainty and failed to do so.  *See Pittington*, 880 F.3d at 799.

Gunter's contrary arguments fall short.  Gunter maintains that *Hance* is not the binding law in this circuit because a previous case, *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176 (6th Cir. 1983), blessed the awarding of lost benefits based on an insurance policy's value.  But *Blackwell* said nothing about the proper test for ascertaining lost insurance benefits.  It discussed benefits in two-and-a-half sentences, saying only that the employee was entitled to $715 because "he would have received [that amount] in health insurance if [his employer] had not illegally discharged him."  *Id.* at 1185–86.  That passing explanation offers no information about the proper method of proof.

Gunter adds that he showed that his replacement insurance cost more than his insurance with Bemis.  Just because Gunter says he incurred expenses, however, does not mean the jury is free to use whatever metric it wants in determining the amount to award.  *Hance*, 571 F.3d at 522.  In the end, Gunter provided no evidence from which a jury could reasonably find the actual expenses he incurred in joining his wife's insurance.

For these reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.